*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF ROSE,

Plaintiff-Appellee,

v

DEVOTED FRIENDS ANIMAL SOCIETY and
MELISSA BORDEN,

Defendants-Appellants.

UNPUBLISHED
April 21, 2022

No. 356599
Oakland Circuit Court
LC No. 2019-178042-CZ

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

In this zoning dispute, defendants appeal as of right the trial court's order granting summary disposition to plaintiff. Defendants contend on appeal that the trial court erred by prematurely rejecting their equitable estoppel defense when ruling on a motion for summary disposition. We disagree and affirm.

## I. BACKGROUND

This case arises from defendants housing approximately 60 to 75 dogs on a property within plaintiff Rose Township's zoning authority without the necessary special land use approval. Defendant Devoted Friends Animal Society is a nonprofit organization that serves as "an animal rescue and rehabilitation facility," and defendant Melissa Borden is a board member of defendant Society and is in charge of operations at the property. Devoted Friends previously had an established operation in Frenchtown Township; according to defendants, the operation began "as a foster site for a single dog at Borden's home" and expanded until Frenchtown Township officials objected. In May 2019, Devoted Friends purchased their property in Rose Township, hoping to avoid similar problems.

According to defendant Borden, before beginning operations and moving any dogs onto the property (but after Devoted Friends purchased the property), she reached out to David Plewes, plaintiff's zoning administrator, regarding any applicable zoning requirements for the site. According to Borden, Plewes "told [her] that [she] could apply for a kennel permit with Oakland County or purchase licenses for each individual dog that [she] took in." Borden subsequently

-1-

clarified that it appeared to her that Plewes "didn't have a clue," and so Plewes "was going to talk to the county and decide what we were to do between special use kennel license or individual [sic] licensing the dogs." According to Borden, ultimately "the county agreed that we were going to individually license the dogs." Defendant Borden stated that, following this advice, she purchased a license for each dog taken in. According to Plewes, however, Borden did not contact him until after he began receiving complaints in August 2019 from neighbors regarding incessant barking from defendants' property. According to Plewes, he told Borden that she needed a special land use approval to operate a dog kennel, and Oakland County *also* required the dogs to be licensed. Plewes maintained that defendants had moved the dogs and other animals onto the property before Plewes was aware of their presence. In an interrogatory response, defendants indicated that they first brought dogs, along with horses and other livestock, onto the property on June 8, 2019.

Plewes issued two zoning violation notices to defendants. Following defendants' failure to subsequently file any application or request for zoning approval, plaintiff filed a complaint against defendants, alleging a zoning violation and nuisance from their operating a dog kennel without applying for or obtaining the necessary approval from the Township Planning Commission. This complaint was amended to allege a separate zoning violation from the expansion of the property's permitted use as a riding facility. Plaintiff sought a preliminary injunction requiring defendants to remove the dogs and not accept any new dogs, unless and until the necessary zoning approval was obtained. The trial court issued an order prohibiting defendants from receiving additional dogs, but it otherwise denied plaintiff's requested preliminary injunction.

Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(8), (9), and (10). In relevant part, defendants argued that, in light of Plewes's alleged advice to Borden before the dogs were moved to the property, and certain improvements defendants made to the property in furtherance of their operation, plaintiff was equitably estopped from enforcing its ordinances. After a hearing on plaintiff's motion, the trial court entered a thorough and thoughtful opinion and order granting plaintiff's request for summary disposition under both MCR 2.116(C)(9) and (10). Relevant to this appeal, the court found that "defendants' defenses are so clearly untenable as a matter of law that no factual development could possibly deny plaintiffs right to recovery." Regarding defendants' equitable estoppel defense, the court reasoned as follows:

> it would not be justifiable for defendants (Borden specifically) to rely on statements by Plewes based on her own statement that she didn't think he had a clue as to what was needed for her "type" of operation. Further, this Court finds that defendants acted prior to any discussion between Borden and Plewes since she had already moved the dogs onto the Property approximately 2 months before the discussions.

This appeal followed. We note that the only arguments defendants make on appeal pertain to the trial court's rejection of their equitable estoppel argument.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Although the

trial court granted plaintiff's motion under MCR 2.116(C)(9) and (10),[1] it evaluated evidence beyond the pleadings in doing so. Therefore, "we construe the motion as having been granted pursuant to MCR 2.116(C)(10)." *Cuddington v United Health Serv*, 298 Mich App 264, 270; 826 NW2d 519 (2012). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation omitted).

A moving party satisfies its burden under MCR 2.116(C)(10) by either "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim[] or by demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks and citation omitted). Once this initial burden is met, the nonmovant must "set forth specific facts showing that a genuine issue of material fact exists" and "may not rely on mere allegations or denials in the pleadings." *Id*. (quotation omitted). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id*. (quotation omitted).

### III. APPLICABLE LAW

"Townships have statutory authority to enact and enforce zoning ordinances for the orderly planning of their communities." *Lyon Charter Twp v Petty*, 317 Mich App 482; 896 NW2d 477 (2016), citing MCL 125.3101 *et seq*., vacated in part on other grounds 500 Mich 1010 (2017). "To achieve these goals, [i]t is the policy of this state and a goal of zoning that uses of property not conforming to municipal zoning ordinances be gradually eliminated." *Id*. at 488 (quotation marks and citation omitted; alteration in original). Although municipalities generally are not estopped from enforcing zoning ordinances, because persons are charged with knowledge of the provisions of those ordinances and the powers of municipal officials under those ordinances, "the doctrine of non-estoppel of a municipality in the field of zoning is not without exception." *Pittsfield Twp v Malcolm*, 375 Mich 135, 146; 134 NW2d 166 (1965).

This Court has held that a

> township can be equitably estopped from enforcing a zoning ordinance when[] (1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts. [*Lyon Charter Twp*, 317 Mich App at 490 (quotation marks and citation omitted).]

---

[1] The trial court denied plaintiff's motion under MCR 2.116(C)(8).

The prejudice must be more than *de minimis*.[2]  *Id*. at 491.  Merely being misinformed about the provisions of an ordinance by a municipal official, and expending some amount of money on that basis, is insufficient grounds to estop the municipality from enforcing the ordinance.  *Jourden v Wyoming Twp*, 358 Mich 496, 499; 100 NW2d 284 (1960); *White Lake Twp v Amos*, 371 Mich 693, 698-699; 124 NW2d 803 (1963).  Even issuance by the municipality of unlawful permits or licenses does not necessarily confer a right to rely on those permits or licenses.  See *Fass v City of Highland Park*, 326 Mich 19, 24-31; 39 NW2d 336 (1949).  Rather, the presence of "exceptional circumstances" does not turn on any one factor, but whether "the entire circumstances, viewed together, present compelling reasons why equity should refuse" the municipality's enforcement of its ordinance.  *Pittsfield Twp*, 375 Mich at 148.

## IV.  ANALYSIS

Defendants argue that the trial court erred by prematurely rejecting their equitable estoppel defense when ruling on a motion for summary disposition.  Defendants primarily argue that the trial court erred by engaging in impermissible fact-finding concerning their equitable estoppel defense.  According to defendants, their estoppel defense turns on whether it was reasonable for them to rely on Plewes's instructions, and reasonableness is a question for the finder of fact.

## A.  REASONABLE OR JUSTIFIABLE RELIANCE

Initially, "reasonable" and "justifiable" are not necessarily synonyms.  Although usually discussed in the context of statutory interpretation, different words are generally presumed to have different meanings.  See *Andrusz v Andrusz*, 320 Mich App 445, 454; 904 NW2d 636 (2017).  However, we can find no published case in Michigan clearly exploring the distinction, if any.  Although *Lyon Charter Twp* refers to "justifiable" reliance as one of the prerequisites to the application of equitable estoppel, other case law has used "reasonable" reliance for the same prerequisite.  See *Adams v City of Detroit*, 232 Mich App 701, 708; 591 NW2d 67 (1998).  A United States District Court has opined that, in reliance upon an unpublished case from this Court, "[j]ustifiable reliance means *reasonable* reliance."  *Mid-Century Ins Co v Fish*, 749 F Supp 2d 657, 677 (WD Mich, 2010) (emphasis in original).[3]  Older Michigan cases did not use either word, instead discussing "rightful" reliance, *Postal v Home State Bank for Savings*, 284 Mich 220, 229; 279 NW 488 (1938), or whether a party had "reason to believe," *Meister v Birney*, 24 Mich 435, 440 (1872).

The United States Supreme Court has indicated that the words have distinct meanings at common law.  *Field v Mans*, 516 US 59, 70-71, 74; 116 S Ct 437; 133 L Ed 2d 351 (1995).  A case upon which the United States Supreme Court relied explained that "justifiable" reliance was

---

[2] Our Supreme Court vacated as unnecessary and not "well-grounded in Michigan jurisprudence" this Court's observation that the requisite degree of prejudice must be substantial enough to destroy all value of the premises.  *Charter Twp of Lyon v Petty*, 500 Mich 1010; 896 NW2d 11 (2017).  It implicitly left intact the proposition that the requisite degree of prejudice must not be trivial.

[3] Decisions from federal courts are not binding upon us, but they may have persuasive value.  See *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

-4-

a moderately-stringent standard, "represent[ing] a compromise between the rigid reasonableness standard and the lenient actual reliance standard." *In re Vann*, 67 F 3d 277, 281 (CA 11, 1995). Consistent with that definition, the United States Supreme Court explained that "justifiable" reliance took into consideration the particular circumstances of a transaction and the individual characteristics of the involved party, instead of a strictly objective "reasonable person" standard. *Field*, 517 US at 70-71. Nevertheless, the person was still obligated to exercise diligence within that context. *Id*. at 71-72. In light of the extensive case law treating "justifiable" and "reasonable" as indistinguishable, we conclude that they are synonymous for purposes of equitable estoppel.

Although defendants are correct to point out that reasonableness is usually a question of fact for the jury, "reasonableness" is not inherently immune to summary disposition upon a finding that there is no genuine question of material fact. See *Cowles v Bank West*, 476 Mich 1, 35; 719 NW2d 94 (2006); *Nasser v ACIA*, 435 Mich 33, 55; 457 NW2d 637 (1990). The same principle would logically apply to "justifiability," presuming any distinction exists in Michigan. On this record, no genuine question of material fact can be found.

According to Borden's testimony, she believed that Plewes "didn't have a clue" about the process of ensuring that Devoted Friends was in compliance with all applicable requirements, and Plewes promised to talk to the county, but "it was all very vague and it was going to be worked out." Borden further testified that she received notice from *the county* that she should individually license all of defendants' dogs.[4] Defendants additionally had some prior experience seeking a special land use permit and a kennel license when their operation had been based in Frenchtown Township. As such, defendants could not have been wholly ignorant of the distinction between township and county ordinances and requirements. Furthermore, defendants could not have had any reason to rely on Plewes for advice, given his apparent cluelessness and reliance on the county—which was the entity that apparently *actually* told defendants what they should do. Therefore, irrespective of any distinction that may exist between reasonable and justifiable reliance, the trial court correctly found no genuine question of material fact whether defendants' actual reliance had an adequate basis.

## B. EXCEPTIONAL CIRCUMSTANCES

Additionally, mere receipt of wrong advice from a township official is insufficient to give rise to the "exceptional circumstances" needed to estop a municipality from enforcing a zoning ordinance. *Jourden*, 358 Mich at 499; *White Lake Twp*, 371 Mich at 698-699. Even if there had been a question of fact regarding reasonable or justifiable reliance, there is no genuine question of material fact whether any other grounds for estoppel exist.

---

[4] Because the parties only attached excerpts from Borden's deposition, a practice we discourage due to the confusion it tends to create, it is somewhat difficult to distinguish between two different conversations Borden had with Plewes, but Borden was consistent in stating that either she or Plewes deferred at least in part to *the county*, and moreover it was *the county* from which she received notice that she should individually license each dog.

Defendants purchased the property before talking to Plewes. Therefore, defendants could not have relied upon representations from Rose Township in purchasing the property. Defendants spent perhaps as much as $15,000 on materials for a barn and a presumably-considerable number of hours of volunteer labor. We do not regard that expenditure as trivial,[5] and we presume for discussion that it was undertaken in at least actual reliance upon representations from Plewes. Nevertheless, the evidence indicates that dogs are not the only animals that defendants keep on the property in the course of their operation. There is no evidence that the barn or the property has been rendered worthless for any other purpose, or that the upgrades to the barn—apparently consisting mostly of insulation—would be wasted if the barn were to be repurposed. See *Pittsfield Twp*, 375 Mich at 148; see also *Fass*, 326 Mich at 31.

Furthermore, defendants were never given any kind of permit, license, or other formal dispensation to operate a kennel, which our Supreme Court has indicated to be important to the kind of "exceptional circumstances" that would estop a municipality from enforcing an ordinance. See *Pittsfield Twp*, 375 Mich at 146-148. Defendants were informed on August 26, 2019, that Rose Township believed they needed a kennel license. This was no more than three months after defendants purchased the property and shortly after Rose Township received complaints about barking, making it difficult to say that Rose Township sat on its rights. Cf. *id*. at 137 (notice given ten and a half months after completion of a specialized building constructed on the basis of an erroneous permit); *Oliphant v State*, 381 Mich 630, 637; 167 NW2d 280 (1969) (claim initiated by state after seventeen years, during which the property owners paid taxes and constructed and installed homes, streets, and utilities). Although defendants' frustration is understandable, and they have doubtless suffered some amount of prejudice, the kind of "exceptional circumstances" that would warrant application of equitable estoppel are simply not present in the record.

The trial court properly concluded that there was no question of material fact whether defendants could prevail on their estoppel argument. Because defendants raise no other challenge to the trial court's grant of summary disposition in plaintiff's favor, we decline to address plaintiff's alternative arguments in support of affirmance.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[5] Although volunteer labor may not, strictly speaking, be a "financial" loss, we believe it to be fairly equivalent under the circumstances, even if its dollar value may not immediately be defined.